IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM HENRY HARRISON, *pro se*, )
)
Plaintiff, )
)
v. ) CIVIL NO. 3:11-cv-091-REP
)
MICHAEL J. ASTRUE, )
 Commissioner of Social Security, )
)
Defendant. )

## REPORT AND RECOMMENDATION

William Henry Harrison ("Plaintiff") is a Vietnam veteran who suffers from post-traumatic stress disorder ("PTSD"). Since returning from Vietnam, he has been gainfully employed as a legal assistant, incarcerated in a penitentiary, and involuntarily committed to a mental institution while awaiting federal prosecution. In addition to psychological limitations, Plaintiff asserts that he suffers from disabling back pains, a hernia, and headaches. On October 31, 2008, Plaintiff applied for Social Security Disability ("DIB"), alleging that he contracted his current maladies and became disabled under the Social Security Act (the "Act") in April 1995.[1] Plaintiff's claim was presented to an administrative law judge ("ALJ"), who determined that Plaintiff became disabled under the Act on October 31, 2008. The Appeals Council denied Plaintiff's request for review on October 22, 2010 after the presentation and consideration of new evidence. Plaintiff now challenges the ALJ's determination that Plaintiff was not under a

---

[1] Despite originally claiming March 1, 1975 as his initial date of disability, Plaintiff now limits the start date of his alleged disability to April 1995. (Plaintiff's Statement of Mat. Facts ("Pl.'s Facts") at 5.)

disability before March 31, 2001 in an attempt to secure a retroactive award of additional benefits.

In her opinion, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform unskilled work with no interaction with the public and limited interaction with coworkers and supervisors before October 31, 2008. (R. at 26.) Plaintiff alleges the ALJ erred because her finding was (1) determined without fully developing the record, as required under 20 C.F.R. § 404.1512(d) and (2) contrary to and not supported by evidence presented in the record.[2] (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 1.) Had the Appeals Council overruled the ALJ, Plaintiff would have been eligible for DIB before March 31, 2001, entitling him to more than one year of additional benefits.

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment and motion to remand (ECF No. 11) be DENIED; that

---

[2] Because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe his arguments. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (citations and internal quotation marks omitted); *Pearn v. Astrue*, No. 3:10cv 427, 2011 WL 3236064, at *4 (E.D. Va. April 7, 2011) (construing a disability claimant's general challenge to the ALJ's decision as a challenge to the ALJ's RFC determination and step five denial of benefits).

[3] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (ECF No. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. MEDICAL HISTORY

Plaintiff alleges that he was mentally ill and therefore under a disability before March 31, 2001. As such, Plaintiff assigns error to the dearth of medical records before March 31, 2001 in the record as well as the ALJ's assessment of the medical records and physician opinions. For this reason, Plaintiff's psychological and medical history before March 31, 2001 is of particular relevance.

However, because that medical history includes an accusation of malingering,[4] Plaintiff's criminal history must briefly be discussed. Plaintiff was convicted of possession of marijuana in 1967. (*See* R. at 290.) In 1976 he was charged with and sentenced for one year for making a false statement on a loan application. (*See* R. at 290.) Plaintiff was charged and convicted of shoplifting and criminal possession of a forged instrument in 1981, which resulted in a sentence of 42 months to seven years. (*See* R. at 290.) Two years later, he was arrested for and convicted of unauthorized use of a vehicle and sentenced to one year. (*See* R. at 290-91.) In December 1998, Plaintiff was remanded to federal prison for possessing with intent to distribute cocaine and marijuana, and conspiring with intent to distribute cocaine and marijuana. (*See* R. at 102, 286.) After federal authorities rejected Plaintiff's plea offering, Plaintiff began exhibiting bizarre behavior that could have been contributed to psychosis. (R. at 287.) Plaintiff was ultimately convicted of both counts related to his December 1998 arrest, including conspiracy to distribute

---

[4] Malingering refers to the "willful, deliberate, and fraudulent feigning or exaggeration of the symptoms of illness or injury, done for the purpose of a consciously desired end." *Dorland's Illustrated Medical Dictionary* at 1099 (Ed. 32, 201.).

3

narcotics. (*See* R. at 101.) Plaintiff was released from federal prison in August 2008, having been in federal custody for close to ten years. (*See* R. at 101-12.)

### A. February 1999 – Lutheran Hospital Psychiatric Department

While in federal custody pending his latest criminal prosecution, Plaintiff was admitted to Lutheran Hospital Psychiatric Department to rule out psychosis, malingering, neurologic disorder, and medical disorders. (R. at 195.) While staying at the hospital, Plaintiff's behavior was documented by the nurses who noted, among other things, that Plaintiff was "selectively mute, guarded, and suspicious." (R. at 229.) During his one-month admission, Plaintiff's diagnosis was noted as "psychosis."(R. at 261-62.)

### B. Early 2000 – Bureau of Prisons Medical Documents

Although Plaintiff complains that the ALJ failed to obtain all medical records before March 31, 2001, he included some additional medical records for consideration with his appeal to the Appeals Council. (*See* R. at 499-506, 515-18.) Ms. Carlene A. Beasley, a nurse for the Federal Correctional Institution ("FCI") in Butner, North Carolina, had been appointed as Plaintiff's representative for an involuntary medication hearing on February 25, 2000. (R. at 515.) Her notes indicate that Plaintiff had exhibited bizarre behavior since returning from Vietnam. (R. at 515.) The warden of the FCI, Stephen M. Dewalt, noted that Plaintiff had been diagnosed with an unspecified psychotic disorder and that Plaintiff had been exhibiting bizarre behavior. (R. at 518.) Based on Plaintiff's behavior, including his insistence that he was God, Dr. Jean Zula determined that it was in Plaintiff's best interests to involuntarily medicate him. (R. at 516-17.)

4

### C. May 2001 – Forensic Evaluation

By May 2001, after having been evaluated for and adjudicated incompetent to stand trial, Plaintiff resided in numerous federal mental health facilities within the Bureau of Prisons for additional psychiatric evaluations and treatment. (R. at 286-87.) Doctors Byron Herbel and Robert E. Cochrane evaluated Plaintiff's mental state on May 11, 2001, and discussed previous evaluations of Plaintiff's mental illness from 1999 through 2001. (*See* R. at 286-91.)

In two separate evaluations in 1999, doctors determined both that Plaintiff was feigning some psychiatric symptoms and that the authenticity of his other psychiatric symptoms was unclear. (R. at 287.) In early 2000, examiners determined that Plaintiff had genuine psychotic symptoms but, once treated with medicine, was able to function in the general population of the hospital. (R. at 288.)

In early 2001, Plaintiff underwent an annual physical exam, during which the only abnormalities detected were elevated cholesterol, hypertension, and weight gain. (R. at 288.) On May 11, 2001, Drs. Herbel and Cochrane also noted that Plaintiff functioned normally with peers, but manifested bizarre behavior when being watched by staff. (R. at 288.) The doctors diagnosed Plaintiff with psychotic disorder not otherwise specified. (R. at 289.) Although Plaintiff's symptoms were consistent with a genuine psychosis, the doctors also diagnosed him with malingering, because they noted an exaggeration of the severity of Plaintiff's psychotic symptoms. (R. at 289.)

Finally, the doctors noted in Plaintiff's evaluation the possibility that Plaintiff feigned all of his psychotic symptoms: "If he manifests a marked improvement in his mental status after his release from custody, this would be incompatible with the persistent impairments that he demonstrated during his prolonged period of evaluation and treatment." (R. at 291.)

5

Nonetheless, Drs. Herbel and Cochrane opined that Plaintiff was not competent to stand trial and recommended that the pending federal drug charges against him be dismissed. (R. at 289-90.) Despite the opinions of Drs. Herbel and Cochrane, the prosecution went forward and Plaintiff was convicted.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 31, 2008, claiming disability due to PTSD, disabling back pains, a hernia, and headaches with an alleged onset date of April 1995. (*See* R. at 79-81; Pl.'s Facts at 5.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[5] (R. at 21.) On April 30, 2010, Plaintiff testified before an ALJ. (R. at 21.) On June 18, 2010, the ALJ issued a decision finding that Plaintiff's disability did not commence until October 31, 2008.[6] (R. at 21-32.) When Plaintiff appealed the ALJ's decision, he included additional medical records. (*See* R. at 499-506.) Upon reviewing Plaintiff's additional medical records, the Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on October 22, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 9-11.)

---

[5] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

[6] The ALJ partially based her decision on the date Plaintiff had the additional impairment of inguinal hernia. (*See* R. at 24.)

## III. QUESTIONS PRESENTED

Has the Commissioner adequately developed the record with respect to Plaintiff's medical history?

Is the Commissioner's decision that Plaintiff is not entitled to benefits before March 31, 2001 supported by substantial evidence on the record and the application of the correct legal standard?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks

omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[7] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe

---

[7] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

8

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[8] based on an assessment of the claimant's residual functional capacity ("RFC")[9] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in

---

[8] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[9] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

9

significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff met the insured status requirements of the Act through March 31, 2001.[10] (R. at 24.) At steps two and three, the ALJ determined that Plaintiff had PTSD, psychosis, degenerative disc disease of the lumbar spine, shrapnel wound to the left buttock, osteoarthritis of the knees, and obesity before October 31, 2008, but that these impairments did not meet or equal any listing in 20 C.F.R. pt. 404, subpt. P, app. 1, as required for the award of benefits at that stage. (R. at 24-26.) Before October 31, 2008, his obesity and degenerative disc disease of the lumbar spine did not result in evidence of nerve root compression, his medical ailments did not result in evidence of an inability to ambulate effectively, and his shrapnel wound was not under continuing surgical management. (R. at 24-25.)

---

[10] Because the time period before March 31, 2001 is at issue, the Court will omit the ALJ's post-Ocotber 31, 2008 findings when necessary.

10

Additionally, the ALJ held that before October 31, 2008, Plaintiff's mental impairments did not meet "paragraphs B or C" requirements of 20 C.F.R. pt. 404, subpt. P, app. 1, sec. 12.03 & 12.06, because his mental impairments did not cause marked limitations or repeated episodes of decompensation[11], nor has he had a history of being unable to function outside of a highly supportive living arrangement for more than one year.[12] (R. at 25.) More specifically, the Plaintiff's mental impairments moderately restricted him from daily living as he could eat, shower, and perform other activates independently; inhibited his social functioning, as he was distrustful, guarded, and angry; and moderately restricted him from concentration. (R. at 25.)

---

[11] Decompensation is the "failure of defense mechanisms resulting in progressive personality disintegration." *Dorland's* at 475.

[12] Under the Act, paranoid and other psychotic disorders and anxiety related disorders must meet Paragraph B or C criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03 & 12.06. Paragraph B requires the claimant to exhibit at least two of the following symptoms: "[m]arked restriction of activities of daily living[, m]arked difficulties in maintaining social functioning[, m]arked difficulties in maintaining concentration, persistence, or pace[, r]epeated episodes of decompensation, each of extended duration." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03 & 12.06. For section 12.03, paragraph C criteria is defined as:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03(C). Paragraph C criteria for section 12.06 only requires the anxiety related disorder to result "in complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(C).

Additionally, Plaintiff experienced no episodes of decompensation and could function outside a highly supportive living environment. (R. at 25.)

The ALJ next determined that before October 31, 2008, Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), except that his work should have been unskilled with no interaction with the public and occasional interaction with coworkers and supervisors. (R. at 26.) Although the ALJ determined that Plaintiff's physical and mental ailments were credible after October 31, 2008, she noted that the record was devoid of medical evidence before February 1999. (R. at 27.) Records pertaining to Plaintiff's mental state before May 2001 note Plaintiff's bizarre behavior, determine that Plaintiff was not competent to stand trial, and order Plaintiff for civil commitment. However, those records also consistently question Plaintiff's mental state. In many instances, Plaintiff was diagnosed with malingering as well as psychosis. (R. at 27-28.) Based on these records and Plaintiff's marked improvement in his mental state in 2004 and 2005, the ALJ determined that Plaintiff had the RFC to perform work before October 31, 2008. (R. at 26-31.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work due to the mental demands accompanying a legal assistant. (R. at 30.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could have performed before October 31, 2008. (R. at 30-33.) Accordingly, the ALJ concluded that Plaintiff was not disabled before October 31, 2008, and was employable such that he was not entitled to benefits before that time. (R. at 31.)

The issue raised in this appeal, therefore, is not whether Plaintiff is entitled to disability benefits. He is and has been receiving them since October 31, 2008. Arguing that he was

12

disabled as of the earlier date, Plaintiff seeks reversal and remand to develop the record and a retroactive award of benefits for April 1995 through March 31, 2001, Plaintiff's date of last insurance.[13] (*See* Pl.'s Mem. at 13; Pl.'s Facts at 5.) In support of his position, Plaintiff first argues the dearth of medical documents between 1995 and 2001 in the record confirm that the Commissioner failed to fulfill his obligation to adequately develop the record. (Pl.'s Mem. at 3-4) Plaintiff also asserts that the ALJ's finding that Plaintiff was capable of performing unskilled, medium work before October 31, 2008 is not supported by substantial evidence and fails to apply the correct legal standards. (Pl.'s Mem. at 4-12.) Defendant argues in opposition that the Commissioner did attempt to fully develop the record, the record is sufficiently developed, and the Commissioner's final determination is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mem. at 9-12.)

More specifically, Plaintiff contends that the ALJ's holding that there were "no marked restrictions" on Plaintiff's activities before March 31, 2001 was erroneous, because he was confined in a mental institution and forced to take medication. (Pl.'s Mem. at 4.) Plaintiff additionally disagrees with the ALJ's determination that he had no episodes of decompensation and was able to function outside of a highly supportive living arrangement based on the nurse's notes from the Lutheran Hospital Psychiatric Department. (Pl.'s Mem. at 6-8.) Plaintiff contends that the ALJ's decision was based solely on one statement in the May 11, 2001 report describing him as interacting normally with peers, but behaving bizarrely when hospital staff was

---

[13] Claimants are not entitled to receive benefits during their incarceration for felony convictions. 20 C.F.R. § 404.468(a) ("No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony."). Plaintiff was charged in 1998 with and convicted of intent to and conspiracy to distribute cocaine and marijuana.

13

present. (R. at 8.) Finally, Plaintiff argues that the VE's testimony was favorable for a finding of disability for the Plaintiff. (R. at 10-11.)

A.   **The Commissioner adequately developed the record.**

In her decision, the ALJ notes "[t]he medical evidence of record is devoid of treatment before February 1999." (R. at 27.) Similarly, Plaintiff contends that the Commissioner failed to adequately develop the record because various medical records from 1999 through 2001 were not obtained. (See Pl.'s Mem. at 3-4.) While the Commissioner has the duty to develop the record, he is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."); *see also Bell v. Chater*, 57 F.3d 1065, 1995 WL 347142, at *4 (4th Cir. 1995) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)).

Here, the Commissioner attempted to obtain Plaintiff's prison records that could have contained additional medical information from 1999 through 2001. (*See* R. at 470-71.) Plaintiff was not without the ability to obtain his own medical records and, in fact, was successful in obtaining some documents and added them to the record himself for his appeal to the Appeals Council. (*See* R. at 499-506, 515-18.) While the number of medical records from 1999 to 2001 was small, some of the documents, such as the May 2001 forensic evaluation by Drs. Herbel and Cochrane, summarized Plaintiff's mental health history from his arrest for possession of cocaine in early 1999 through the date of the evaluation. As such, the small evidentiary gap between 1999 and 2001 was not prejudicial to the Plaintiff, as medical records that fully developed Plaintiff's mental illness history during that time period were included, reviewed, and discussed by the ALJ. (*See* R. at 27-28.) *See also Perry v. Astrue*, No. 3:10cv 01248, 2011 WL 5006505, at *15-16 (S.D.W.V. 2011).

**B.     The ALJ properly assessed Plaintiff's medical records.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Before March 31, 2001, Plaintiff had met with numerous treating psychiatrists, most of whom not only diagnosed Plaintiff with psychosis but also discussed the strong possibility of, and at times diagnosed Plaintiff with, malingering. (*See, e.g.*, R. at 287, 289.) While Plaintiff extensively summarizes the nurses' notes available in the record and lays out a cohesive argument detailing his finding by a federal court that he was unfit to stand trial (*see* Pl.'s Mem. at 4-5, 7-8.), the ALJ noted that "the unifying theme among" Plaintiff's psychosis diagnoses "is at least a significant suspicion of symptom feigning, at least in part." (R. at 29.) Plaintiff's lengthy criminal history further undermines his credibility and supports the notion that he feigned many of his symptoms of mental illness in an attempt to avoid federal prosecution of drug-related crimes. The ALJ therefore properly reviewed and evaluated the full medical record before her and did not make a determination based on an isolated sentence, as alleged by Plaintiff.

Next, Plaintiff points to nurses' notes to explain that he was having episodes of decompensation and was not able to function outside of a highly supportive living arrangement, because he was involuntarily committed. (Pl.'s Mem. at 4.) However, from 1999 through 2001, Plaintiff was living in federal psychiatric wards, so that he could be mentally evaluated and cleared to stand trial for federal criminal charges. (*See* R. at 286.) As noted by the ALJ, the record contains discussions of Plaintiff's ability to personally care for himself within the confines of the mental institution. (R. at 29.) As discussed above, treating psychiatrists were suspect of Plaintiff's purported episodes of decompensation and weary to diagnose him with psychosis. The ALJ's findings were, therefore, supported by substantial evidence within the record.

Finally, Plaintiff argues that the ALJ ignored the VE's testimony that Plaintiff's inability to sit or stand would impact his inability to perform certain jobs. (Pl.'s Mem. at 10.) On the contrary, the ALJ actually agreed with the VE's favorable testimony and granted Plaintiff benefits starting on October 31, 2008. Of course, that was the first date on which Plaintiff had clear evidence of his diagnoses of PTSD, chronic hernia pain, and chronic back/shrapnel wound pain and the date on which Plaintiff became disabled under the Act. (*See* R. at 31.) The ALJ determined that before October 31, 2008, Plaintiff's ailments did not show an inability to ambulate (R. at 24-25); consequently, such hypotheticals discussing an inability to do so during that time were irrelevant.

C.  **The ALJ's credibility analysis is supported by substantial evidence.**

In evaluating the credibility of a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. *Id.* at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Id.* at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements

17

regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Id.* at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997); *see also Hancock v. Astrue*, 667 F.3d at 476 (citation omitted). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc.*, 132 F.3d at 1011 (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

As noted earlier, the medical records did not substantiate the severity of mental illness. (R. at 27-28.) The objective medical evidence, together with the circumstance surrounding Plaintiff's involuntary confinement — more specifically, his federal imprisonment — diminished his credibility regarding the seriousness of his mental illness. (*See* R. at 28-29.) Most notably, as recognized by the ALJ, was Drs. Herbel and Cochrane's strong suspicion of Plaintiff's malingering along with their notation that Plaintiff's marked improvement would be strong evidence against their psychosis diagnosis. (R. at 28, 291.) And Plaintiff's extensive criminal record further undermines his credibility. Thus, substantial evidence also supports the ALJ's decision regarding Plaintiff's credibility of his mental illness. Accordingly, this Court recommends that the ALJ's credibility analysis be affirmed.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand (ECF No. 11) be DENIED; that Defendant's motion for summary judgment (ECF No. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                        /s/
                                  David J. Novak
                                  United States Magistrate Judge

Richmond, Virginia

Date May 8, 2012